# United States Tax Court

T.C. Memo. 2024-39

ROBERT A. ZIENKOWSKI,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 9326-22L.                    Filed April 8, 2024.

————

Robert A. Zienkowski, pro se.

*Alexander S. McCormick*, *Mayer Y. Silber*, and *Kerrington A. Hall*, for respondent.


## MEMORANDUM OPINION

LAUBER, *Judge*:  In this collection due process (CDP) case petitioner seeks review pursuant to sections 6320 and 6330(d)(1)[1] of the determination by the Internal Revenue Service (IRS or respondent) to sustain a Notice of Federal Tax Lien (NFTL) filing.  The notice relates to petitioner's unpaid tax liability for 2016.  Respondent has filed a Motion for Summary Judgment under Rule 121, contending that there are no disputes of material fact and that the settlement officers (SOs) did not abuse their discretion in sustaining the collection action.  We agree and accordingly will grant the Motion.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*2]**                    *Background*

The following facts are based upon the parties' pleadings, Motion papers, Declarations, and attached Exhibits, which include the administrative record of the CDP proceeding. *See* Rule 121(c). Petitioner resided in Pennsylvania when he timely petitioned this Court.

Petitioner timely filed Form 1040, U.S. Individual Income Tax Return, for 2016 but failed to pay the tax shown as due. As of November 2018, his unpaid balance for 2016 was $57,873. Near the time of his CDP hearing, petitioner likewise had significant outstanding Federal income tax liabilities for 2012–2015 ($63,709) and 2017 and 2018 ($76,750).

The IRS assessed the tax petitioner had reported for 2016 and mailed him a timely notice and demand for payment. *See* § 6303. He did not respond to that notice. On November 20, 2018, the IRS accordingly filed an NFTL on Form 668, Notice of Federal Tax Lien. The NFTL correctly stated petitioner's name and address (in Bryn Mawr, Pennsylvania), the tax period in issue (the 2016 calendar year), the date of assessment (November 20, 2017), and the unpaid balance due ($57,873). The NFTL indicated that it was filed with the prothonotary for Montgomery County, Pennsylvania.

On November 23, 2018, the IRS sent petitioner by certified mail a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing (lien notice). The lien notice attached a copy of the NFTL and explained that the lien "attaches to all property you currently own and to all property you may acquire in the future." On December 10, 2018, petitioner (through his counsel) timely requested a CDP hearing with respect to the lien notice.[2]

In his hearing request petitioner checked the box stating that he sought "withdrawal" of the lien, but he did not specify the grounds for such withdrawal. He also checked the boxes marked "Installment

---

[2] Petitioner also received a Notice of Intent to Levy and Your Right to a Hearing (levy notice) for tax years 2014–2016. However, he did not submit a timely hearing request with respect to the levy notice, *see* § 6330(a)(3)(B), and he was thus granted an "equivalent hearing." Determinations made by the IRS in an "equivalent hearing" are not subject to judicial review. *See, e.g.*, *Kennedy v. Commissioner*, 116 T.C. 255, 263 (2001). Our review in this case is thus confined to the 2016 tax year and to the determinations the IRS made during the CDP hearing convened with respect to the lien notice.

[*3] Agreement," "Offer in Compromise," and "I Cannot Pay Balance." He attached to his request a completed Form 656, Offer in Compromise (OIC). However, the IRS returned this OIC to him because he failed to submit the required partial payment.[3]

The processing of petitioner's CDP case was delayed by the COVID pandemic. In the interim, a revenue agent (RA) in the IRS Collection Division reviewed the OICs he had previously submitted. Upon examining the file documents, including the deed to his home, she noticed that he did not reside in Montgomery County but rather in the portion of Bryn Mawr situated in Delaware County. On February 11, 2020, she accordingly authorized the filing of another NFTL with the prothonotary of Delaware County. This NFTL covered petitioner's unpaid tax liability for 2016 (which had grown to $69,032) and his unpaid liabilities for 2017 and 2018 (totaling $76,750). The IRS concurrently issued petitioner a Letter 3172 with respect to that NFTL filing. The record does not indicate whether he requested a CDP hearing concerning that notice.

Petitioner's representative submitted to the RA another OIC, dated March 26, 2020, with an accompanying Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals. This OIC proposed to compromise all of petitioner's outstanding tax liabilities for $20,000. The RA indicated in her case activity record her belief that petitioner had submitted this OIC for the purpose of delay.

On July 29, 2020, the CDP case was assigned to an SO (SO1) in the IRS Independent Office of Appeals (Appeals). SO1 reviewed petitioner's file and verified that all requirements of applicable law and administrative procedure had been satisfied. On September 1, 2020, petitioner informed SO1 that he had recently submitted an OIC to the RA. Petitioner faxed a copy of the OIC submission package to SO1 later that month.

Petitioner sold his home in Bryn Mawr in March 2021. The Collection Division received information about the sale proceeds and adjusted its calculation of petitioner's ability to pay accordingly. Petitioner's 2019 tax return had reported an annual salary of $75,000 and a pension of $70,860 from the State of Ohio. After calculating monthly

---

[3] Petitioner submitted numerous OICs before and during the CDP proceeding. All OICs other than the one dated March 26, 2020 (discussed below), were withdrawn by petitioner or were returned to him by the IRS because documents were missing.

[*4] expenses using the applicable national and local standards, the Collection Division determined that he had a net available monthly income of $2,119 and a reasonable collection potential in excess of $200,000. On August 11, 2021, the Collection Division issued him a preliminary rejection letter rejecting his OIC while indicating that the OIC was being forwarded to Appeals for final consideration in conjunction with his CDP case.

In August 2021 the case was reassigned to a second SO (SO2), who reviewed petitioner's file and verified that all requirements of applicable law and administrative procedure had been satisfied. Petitioner's 2020 tax return had reported that his salary (as town manager in Pennsylvania) had doubled to $150,000, substantially increasing his net available monthly income. SO2 nevertheless offered petitioner an installment agreement (IA) consistent with the Collection Division's financial analysis, i.e., an agreement requiring payments of $2,119 per month. During the ensuing six months petitioner submitted numerous counterproposals, urging his entitlement to monthly expenses in excess of national and local standards, questioning the treatment of various expense items (e.g., credit card payments, health insurance costs, housing and utilities costs, and student loan expenses), and urging that his ability to pay was adversely affected by his divorce.

On December 6, 2021, after receiving additional information from petitioner, SO2 revised his financial analysis. On January 19, 2022, he offered petitioner an IA calling for payments of $2,095 per month for 72 months. Petitioner rejected that proposal, countering with an offer to pay $1,000 per month. SO2 rejected that offer but saw merit in petitioner's argument that he needed time to adjust his finances after his divorce. SO2 accordingly proposed a 72-month IA that would fully discharge petitioner's outstanding tax liabilities for all years—totaling more than $150,000—but require monthly payments of only $1,000 for the first year, rising to $2,400 for the next five years. Petitioner countered with a "partial pay" installment agreement (PPIA).[4] SO2 rejected that offer, reiterating his determination that petitioner had the ability to pay his tax liabilities in full.

On February 24, 2022, petitioner's representative met with SO2's Appeals Team Manager (ATM). The ATM agreed with SO2 that

---

[4] A PPIA is an IA whereby the taxpayer agrees to pay only part of the total liability. §§ 6159(a), 7122. Under a PPIA, "[t]he taxpayer must agree to pay the maximum monthly payment based upon the taxpayer's ability to pay." *Internal Revenue Manual* (IRM) 5.14.2.2.1(9) (Apr. 26, 2019).

[*5] petitioner could not claim monthly expenses for his ex-spouse's health insurance premiums, his daughter's student loan payments, or housing expenses in excess of the national and local standards.

Petitioner was afforded the opportunity to provide additional documentation, but he supplied none. SO2 held open, until March 3, 2022, his offer of an IA calling for 12 monthly payments of $1,000 followed by 60 monthly payments of $2,400. Having heard nothing further from petitioner or his representative by that date, SO2 decided to close the case.

On March 31, 2022, Appeals issued petitioner a notice of determination sustaining the NFTL filing for 2016. It explained that his OIC (offering to compromise all of his outstanding tax liabilities for $20,000) and his various IA proposals (offering to pay his tax liabilities only in part) were both rejected because he had the ability to pay his liability in full. Noting that petitioner "did not raise a specific issue regarding the filed Notice of Federal Tax Lien," Appeals nevertheless "considered whether any of the criteria for allowing withdrawal of the lien existed in your case." On that point, Appeals concluded: "There is nothing in the Collection administrative file and you have not provided any additional information that indicates you meet any of the conditions outlined in [section 6323(j)]. As a result, the [SO] determined that the [NFTL] was appropriately filed and withdrawal of the lien was not warranted."

Acting through his attorney, petitioner timely petitioned this Court in April 2022, contending that SO2 abused his discretion in rejecting his proposed OIC and IAs and sustaining the collection action. In August 2022 we granted a Motion to Withdraw filed by petitioner's counsel, who represented that she and petitioner "ha[d] reached an impasse as to an approach to addressing this Petition." On August 31, 2023, respondent filed a Motion for Summary Judgment, urging that SO2 did not abuse his discretion in rejecting petitioner's proposed collection alternatives and in sustaining the NFTL filing.

Petitioner responded to the Motion on October 10, 2023. The sole argument he advances in his Response is that SO2 "abused his discretion in sustaining an improperly filed lien." In a nutshell, he argues that the November 2018 NFTL filing was invalid because it was not filed in Delaware County, where his residence on that date was located, but rather in Montgomery County.

**[\*6]**                                      *Discussion*

I.      *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. However, the nonmoving party may not rest upon mere allegations or denials in his pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); *see Sundstrand Corp.*, 98 T.C. at 520. We find that there exist no genuine disputes of material fact and that summary adjudication is appropriate.

II.     *Standard of Review*

Neither section 6320(c) nor section 6330(d)(1) prescribes the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. The general parameters for such review are marked out by our precedents. Where (as here) the taxpayer's underlying tax liability is not at issue, the Court reviews the IRS decision for abuse of discretion. *Goza v. Commissioner*, 114 T.C. 176, 182 (2000). Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006).

III.    *Abuse of Discretion*

In deciding whether the SOs abused their discretion, we consider whether they (1) properly verified that the requirements of applicable law or administrative procedure have been met, (2) considered any relevant issues petitioner raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of [petitioner] that any collection action be no more intrusive than necessary." § 6330(c)(3); *see* § 6320(c). We conclude that the SOs satisfied all of these statutory requirements.

**[\*7]**   A.   *Verification*

Section 6330(c)(1) requires the SO to "obtain verification . . . that the requirements of any applicable law or administrative procedure have been met."  Petitioner contends that the NFTL filed in November 2018 was invalid because it was filed in the wrong county.  In so arguing, he cites section 6323(f)(1)(A)(i), which provides that an NFTL shall be filed "in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated."  Because petitioner's residence was then located in Delaware County, he urges that the NFTL was invalid because it was filed in neighboring Montgomery County.  Neither petitioner nor his representative advanced this contention at any point during the CDP proceeding.  However, we are obligated to address satisfaction of the verification requirement whether or not the taxpayer raised it in the CDP proceeding.  *See Hoyle v. Commissioner*, 131 T.C. 197, 202–03 (2008), *supplemented by* 136 T.C. 463 (2011).

Section 6321 provides that, "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand," then a lien in favor of the United States arises and attaches to "all property and rights to property, whether real or personal, belonging to such person."  The lien arises automatically at the time of the assessment and continues until the liability is fully satisfied or becomes unenforceable.  *See* § 6322; *Estate of Brandon v. Commissioner*, 133 T.C. 83, 85 (2009).

"An NFTL is valid if it is filed on Form 668, Notice of Federal Tax Lien . . . , and includes the identity of the taxpayer, the tax liability giving rise to the lien, and the date the assessment arose."  *Miccosukee Tribe of Indians of Fla. v. Commissioner*, T.C. Memo. 2015-216, 110 T.C.M. (CCH) 446, 448; Treas. Reg. § 301.6323(f)-1(d).  "If these requirements are met, the NFTL is valid notwithstanding any other provision of law regarding the form or content of a notice of lien, including State law."  *Miccosukee Tribe of Indians*, 110 T.C.M. (CCH) at 448–49.  The NFTL that the IRS filed in November 2018 was made on Form 668, identified petitioner as the taxpayer, properly identified the tax liability giving rise to the lien, and noted the correct assessment date.  The NFTL was therefore valid.

Petitioner has supplied no authority (and we have found none) for the proposition that an NFTL is invalid if filed in a governmental subdivision other than the subdivision in which the taxpayer's residential property is located.  Conceivably, the fact that the initial NFTL for 2016

[*8] was filed in Montgomery County rather than in neighboring Delaware County might have complicated an IRS effort to foreclose the lien on petitioner's residence (which he sold in 2021). *See Berkery v. Commissioner*, T.C. Memo. 2011-57, 101 T.C.M. (CCH) 1258, 1260 (noting that the purpose of filing an NFTL is to protect the Government's interest in a taxpayer's property against the claims of other creditors). But the lien attached not only to the property petitioner then owned but also to "all property [he might] acquire in the future."

The Letter 3172, to which the NFTL filing was attached, was likewise valid, properly informing petitioner of the collection action in question. Section 6320 merely requires the IRS to send notice to the taxpayer that it has filed an NFTL and inform the taxpayer of his right to seek a CDP hearing. *See* § 6320(a)(1), (2), (3)(B). "Minor defects may be overlooked where the taxpayer knows of and pursues the right to administrative and judicial review." *Miccosukee Tribe of Indians*, 110 T.C.M. (CCH) at 448; *Graham v. Commissioner*, T.C. Memo. 2008-129, 95 T.C.M. (CCH) 1504, 1509. We accordingly conclude that the SOs properly verified that all requirements of applicable law and administrative procedure were satisfied.

B.    *Proposed Installment Agreements*

In his Petition, petitioner urged that SO2 erred in rejecting his proposed IAs and PPIA. Section 6159(a) authorizes the IRS to enter into a written agreement allowing a taxpayer to pay a tax liability in installments if it concludes that the agreement "will facilitate full or partial collection of such liability." The decision to accept or reject an IA lies within the Commissioner's discretion. *See Thompson v. Commissioner*, 140 T.C. 173, 179 (2013).

In evaluating petitioner's offers, SO2 adjusted his reported expenses to conform to applicable local and national cost-of-living standards. Although petitioner questioned the downward adjustments SO2 made here, we have repeatedly held that an SO does not abuse his discretion by adhering to such standards. *See Ansley v. Commissioner*, T.C. Memo. 2019-46, 117 T.C.M. (CCH) 1242, 1246; *Friedman v. Commissioner*, T.C. Memo. 2013-44, 105 T.C.M. (CCH) 1288, 1290. It was petitioner's burden to justify a departure from these standards. *See Friedman*, 105 T.C.M. (CCH) at 1290. SO2 reasonably concluded that petitioner had not met that burden, and petitioner advanced no argument to the contrary in his Response to the Motion for Summary Judgment.

**[\*9]**  Petitioner also proposed a PPIA offering to pay part (but not all) of his outstanding liability.  The Commissioner has issued guidelines, set forth in the IRM, for settlement officers to follow in considering such proposals.  *See Thompson*, 140 T.C. at 179.  A prerequisite for approval of a PPIA is that the taxpayer be unable to pay his liability in full.  IRM 5.14.2.1.1(2) (Apr. 26, 2019).  Given SO2's calculation showing that petitioner was able to pay his liabilities in full, there was no abuse of discretion in rejecting the PPIA.[5]

### C.  *Lien Withdrawal*

Petitioner contends that SO2 abused his discretion in declining to withdraw the NFTL filing.  Section 6323(j) authorizes withdrawal if (1) "the filing of such notice was premature or otherwise not in accordance with administrative procedures," (2) the taxpayer has entered into an IA that renders the NFTL unnecessary, (3) withdrawal of the NFTL "will facilitate the collection of the tax liability," or (4) withdrawal of the NFTL "would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States."  § 6323(j)(1).

In his CDP hearing request petitioner checked the box requesting "withdrawal."  But neither he nor his representative subsequently articulated any grounds to support lien withdrawal or submitted any evidence that would justify it.  There is nothing in SO2's case activity record to suggest that this issue was raised at any point during the CDP hearing.  Indeed, the notice of determination indicated that petitioner "did not raise a specific issue regarding the filed Notice of Federal Tax Lien" and had provided no "additional information that indicates you meet any of the conditions outlined in [section 6323(j)]."

Petitioner advanced this argument for the first time in his Response to the Motion for Summary Judgment, urging that the NFTL be withdrawn because it was filed in the wrong county.  Not only was this issue raised too late; as previously discussed, filing an NFTL in a county

---

[5] In his Petition, petitioner urged that the SOs abused their discretion in rejecting his OIC, which offered to compromise for $20,000 his tax liabilities for all open tax years.  But petitioner made substantially larger offers in each of the IAs he submitted subsequently, indicating that $20,000 was not the limit of his ability to pay.  The SOs plainly did not abuse their discretion in rejecting that OIC.

**[\*10]** other than that in which the taxpayer resides does not invalidate the NFTL. *See Miccosukee Tribe of Indians*, 110 T.C.M. (CCH) at 448.[6]

Finally, even if petitioner could demonstrate that he was eligible for lien withdrawal, "[s]ection 6323(j)(1) is permissive, and nothing in it requires [the IRS] to withdraw the NFTL." *Berkery*, 101 T.C.M. (CCH) at 1260; *see* Treas. Reg. § 301.6323(j)-1(c) ("If the Commissioner determines conditions for withdrawal [of an NFTL] are present, the Commissioner may (but is not required to) authorize the withdrawal."). For all these reasons, SO2 did not abuse his discretion in declining to withdraw the NFTL filing.

Finding no abuse of discretion in any respect, we will grant respondent's Motion for Summary Judgment and sustain the proposed collection action. We note that petitioner is free to submit to the IRS at any time, for its consideration and possible acceptance, a collection alternative in the form of an IA or an OIC, supported by the requisite financial information.[7]

To reflect the foregoing,

*An appropriate order and decision will be entered.*

---

[6] The IRS may withdraw an NFTL if that action will facilitate collection of the tax. *See* § 6323(j)(1)(C). Withdrawal may facilitate collection (for example) where the taxpayer demonstrates that the NFTL impairs his ability to hold a job and earn income. But the taxpayer must provide substantiating evidence along these lines to Appeals. *See Klika v. Commissioner*, T.C. Memo. 2012-225, 104 T.C.M. (CCH) 153, 155. When a taxpayer fails (as here) to present such evidence to Appeals, he is precluded from advancing the argument in this Court. *LG Kendrick, LLC v. Commissioner*, 146 T.C. 17, 39 (2016), *aff'd*, 684 F. App'x 744 (10th Cir. 2017); Treas. Reg. § 301.6320-1(f)(2), Q&A-F3.

[7] Petitioner asserts that he has suffered hardship "because of this lien remaining in Montgomery County," including a $31,000 reduction in annual income occasioned by loss of his job. As noted in the text, petitioner was required to advance any argument in support of lien withdrawal during the CDP hearing, not for the first time in this Court. If petitioner's financial circumstances have meaningfully changed since the notice of determination was issued, he is free to submit to the IRS a new proposal for a collection alternative.