T.C. Memo. 2011-57

UNITED STATES TAX COURT

JOHN CARLYLE BERKERY, SR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19070-09L.                    Filed March 9, 2011.

John Carlyle Berkery, Sr., pro se.

<u>Jack T. Anagnostis</u>, for respondent.

MEMORANDUM OPINION

WELLS, <u>Judge</u>:  This case is before the Court on respondent's

motion for summary judgment pursuant to Rule 121.[1]  We must

---

[1]Unless otherwise indicated, section references are to the
Internal Revenue Code of 1986, as amended, and Rule references
are to the Tax Court Rules of Practice and Procedure.

decide whether respondent's settlement officer abused her discretion in sustaining a notice of Federal tax lien filing.

## Background

Some of the facts and certain exhibits have been stipulated. The stipulations of facts and accompanying exhibits are incorporated in this opinion by reference and are found accordingly.

At the time the petition was filed, petitioner resided in Pennsylvania.

On April 11, 2007, petitioner filed a Federal income tax return for his 2004 tax year, reporting a tax liability of $3,258. The following day, on April 12, 2007, he filed a tax return for his 2005 tax year, reporting a tax liability of $3,712. Petitioner did not pay his tax liability for either year. Respondent assessed petitioner's tax liabilities for his 2004 and 2005 tax years on May 14, 2007. On June 18, 2007, respondent sent notices and demands for payment of balances due for petitioner's tax years 2004 and 2005.

On October 29, 2007, petitioner received a call from an employee in respondent's Automated Collection System (ACS) unit. As explained below, the parties disagree about what transpired during the October 29, 2007, telephone call. During the ensuing months, petitioner did not make any payments on his liabilities for his 2004 and 2005 tax years.

On March 20, 2009, respondent filed a Notice of Federal Tax Lien (NFTL) with respect to petitioner's 2004 and 2005 tax years.

During a telephone call on March 23, 2009, petitioner entered into an installment agreement with respondent's ACS unit to pay $75 per month beginning April 12, 2009, and increasing to $145 per month beginning April 12, 2010.  At that time, petitioner apparently was not aware that the NFTL had been filed, and he contends that respondent's employee told him that no lien would be filed if he fulfilled the installment agreement.

The next day, March 24, 2009, respondent mailed petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing, regarding the lien that had been filed on March 20.  Petitioner received the notice 2 days later, on March 26, 2009.  On or about April 2, 2009, petitioner requested a withdrawal of the NFTL by submitting to respondent Form 12277, Application for Withdrawal of Filed Form 668(Y), Notice of Federal Tax Lien.  The filing of the NFTL was upheld by Technical Services Advisor Bruce Clark (Mr. Clark) in a letter dated April 13, 2009, stating that after a review of petitioner's file, Mr. Clark had determined that the lien was not filed prematurely.  The letter informed petitioner that the lien had been filed before the March 23, 2009, installment agreement and that, at that time, he was already in default on a previously established installment agreement.

The parties appear to disagree about whether petitioner had ever entered into a previous installment agreement. Respondent contends that petitioner had entered into an installment agreement during his October 29, 2007, telephone conversation with an employee in respondent's ACS office. Petitioner admits that he spoke with respondent's employee on or about that date, but he contends that he did not enter a formal installment agreement and merely told her that he would do his best to pay as soon as possible. The record does not contain any documentation of the alleged October 29, 2007, installment agreement. However, because the instant case is before us on respondent's motion for summary judgment, we are obliged to view all facts in the light most favorable to the nonmoving party. See Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). For purposes of the instant motion, we will assume that petitioner never entered into an installment agreement before the March 23, 2009, installment agreement.

On April 15, 2009, petitioner timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing. On Form 12153 petitioner requested that the NFTL be withdrawn so that he could refinance his home, and he requested that respondent allow him to continue with the installment agreement entered into on March 23 as a collection alternative instead of imposing the lien.

Petitioner made one payment on the installment agreement in May 2009.

On June 17, 2009, respondent's settlement officer Denise Williams (Ms. Williams) sent petitioner a letter acknowledging his request for a collection due process (CDP) hearing and scheduling a telephone conference. In the letter, Ms. Williams informed petitioner that the lien would be released after petitioner paid the balances due for 2004 and 2005. Ms. Williams also enclosed copies of Publications 783, Instructions on how to apply for a Certificate of Discharge of Property From Federal Tax Lien, and 784, How to Prepare an Application for a Certificate of Subordination of Federal Tax Lien, which she thought would help petitioner obtain financing for his home.

Ms. Williams conducted the CDP hearing by telephone on July 17, 2009. On his Form 12153 and during the hearing petitioner contended that, because he had not entered into an installment agreement on October 29, 2007, he could not be in default on that agreement and he therefore should be given the opportunity to meet the terms of the March 23, 2009, installment agreement before respondent filed an NFTL. Petitioner also informed Ms. Williams that the lien reduced his credit score by 100 points, affecting his eligibility for a loan, and he told her that the lien was "counter-productive to both * * * [respondent] and myself [because] [i]t stops me from getting additional financing

on my house." After the hearing, respondent issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 dated July 30, 2009, sustaining the lien.

## Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials and may be granted where there is no genuine issue of material fact and a decision may be rendered as a matter of law. Rule 121(a) and (b); Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences are viewed in the light most favorable to the nonmoving party. Sundstrand Corp. v. Commissioner, supra at 520. However, the party opposing summary judgment must set forth specific facts that show a genuine issue of material fact exists and may not rely merely on allegations or denials in the pleadings. Rule 121(d).

Where the underlying tax liability is not in issue, we review the determination of the Appeals Office for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000). In reviewing for abuse of discretion, we will reject the determination of the Appeals Office only if the determination was arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 308 (2005), affd. 469

F.3d 27 (1st Cir. 2006). Petitioner does not dispute the underlying liabilities. Consequently, we review the determination of the Appeals Office for abuse of discretion.

Where, as in the instant case, we review a settlement officer's determination to sustain the filing of an NFTL for abuse of discretion, we review the reasoning underlying that determination to decide whether it was arbitrary, capricious, or without sound basis in fact or law. We do not substitute our judgment for that of the settlement officer, and we do not decide independently whether we believe the lien should be withdrawn. See id. at 320.

Pursuant to section 6321, the Federal Government obtains a lien against "all property and rights to property, whether real or personal" of any person liable for Federal taxes upon demand for payment and failure to pay. See Iannone v. Commissioner, 122 T.C. 287, 293 (2004). The lien arises automatically on the date of assessment and persists until the tax liability is satisfied or becomes unenforceable by reason of lapse of time. Sec. 6322; Iannone v. Commissioner, supra at 293. The purpose of filing, pursuant to section 6323, notice of the lien that arises under section 6321 is to protect the Government's interest in a taxpayer's property against the claims of other creditors. Filing an NFTL validates the Government's lien against a subsequent purchaser, holder of a security interest, mechanic's

lienor, or judgment lien creditor. See sec. 6323(a); Stein v. Commissioner, T.C. Memo. 2004-124; Lindsay v. Commissioner, T.C. Memo. 2001-285, affd. 56 Fed. Appx. 800 (9th Cir. 2003).

If the Commissioner chooses to file an NFTL, he must provide the taxpayer with written notice not more than 5 business days after the filing, and he must advise taxpayer of the right to a hearing before the Appeals Office. Sec. 6320(a). If the taxpayer requests such a hearing, the Appeals Office must verify that the requirements of any applicable law or administrative procedure have been met. Secs. 6320(c), 6330(c)(1). The Appeals officer must also determine whether the proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary. Secs. 6320(c), 6330(c)(3). Finally, the Appeals officer must consider any issues raised by the taxpayer at the hearing, including appropriate spousal defenses, challenges to the appropriateness of collection actions, and offers of collection alternatives such as an installment agreement. Secs. 6320(c), 6330(c)(2) and (3).

Under certain circumstances, the Commissioner has the discretion to withdraw an NFTL that has been filed. Section 6323(j)(1) provides:

SEC. 6323(j).  Withdrawal of Notice in Certain Circumstances.--

(1) In general.--The Secretary may withdraw a notice of a lien filed under this section and this chapter shall be applied as if the withdrawn notice had not been filed, if the Secretary determines that--

(A) the filing of such notice was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the lien was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the withdrawal of such notice will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the withdrawal of such notice would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States.

Section 6323(j)(1) is permissive.  Although section 6323(j)(1) allows the Commissioner to withdraw the NFTL for any of the listed reasons, it does not require him to do so.  The regulations make the Commissioner's discretion explicit:  "If the Commissioner determines conditions for withdrawal are present, the Commissioner may (but is not required to) authorize the withdrawal."  Sec. 301.6323(j)-1(c), Proced. & Admin. Regs. (emphasis added).

At the Appeals hearing, petitioner advanced two contentions. His first contention is that respondent should withdraw the NFTL and allow him to proceed with the March 23, 2009, installment

plan, to which petitioner had agreed before learning about the NFTL. Secondly, he contends that the NFTL should be withdrawn so that he can refinance his home, enabling him to pay his tax liabilities.

In support of his first contention, petitioner argues that Mr. Clark was mistaken when he found that petitioner had entered into a previous installment agreement. Petitioner contends that, because he had never entered into such an agreement, he could not be in default, and he therefore should be permitted to fulfill his obligations under the March 23, 2009, installment agreement before the filing of an NFTL.

We conclude that the issue of whether there was a previous installment agreement is irrelevant to the issue of the proper filing of an NFTL.

In Crisan v. Commissioner, T.C. Memo. 2007-67, the Commissioner filed an NFTL against the taxpayers after the parties had begun negotiating an installment agreement. As in the instant case, the taxpayers learned about the NFTL only after they had entered the installment agreement, and, as is alleged in the instant case, the Commissioner had made representations to the taxpayers that no further collection actions would be taken while they were negotiating the installment agreement. Like petitioner, the taxpayers in Crisan argued that the NFTL would damage their credit, making it difficult for them to obtain

additional financing, and that the NFTL had been filed prematurely because they had just entered into an installment agreement. We held that the implementation of an installment agreement did not preclude the Commissioner from filing an NFTL, nor was the Commissioner required to withdraw the NFTL after the installment agreement became effective.

In Ramirez v. Commissioner, T.C. Memo. 2005-179, the taxpayer had entered into an installment agreement after the filing of the NFTL and contended that he should be released from the NFTL. In that case we likewise held that the installment agreement did not preclude the Commissioner from maintaining a lien until the balance of the taxpayer's taxes was paid. See also Dorra v. Commissioner, T.C. Memo. 2004-16. The taxpayer in Stein v. Commissioner, supra, argued that the Appeals Office abused its discretion by rejecting an installment agreement. We stated that even if the Appeals officer had accepted the installment agreement as a collection alternative, the Commissioner would not have been required to withdraw the NFTL until the full liability had been paid.

Section 6323(j)(1) is permissive, and nothing in it requires respondent to withdraw the NFTL because of the installment agreement. Accordingly, we hold that the decision of respondent's Appeals Office to sustain the NFTL despite the installment agreement was not an abuse of discretion.

In support of petitioner's second contention, that the NFTL has made it impossible for him to refinance his home and thus obtain money to pay his tax liabilities, he states that his credit score has been reduced by 100 points. In her letter acknowledging his request for a CDP hearing, Ms. Williams supplied petitioner with information describing how to apply for a certificate of subordination to the NFTL and how to obtain a certificate of discharge from the NFTL. Although he contends that the NFTL has made it impossible for him to refinance his home, petitioner has offered no evidence that he has been rejected for a loan because of the NFTL, or even that he has applied for a loan since respondent filed the NFTL. Nor has petitioner presented any evidence that suggests the alternatives offered by Ms. Williams, i.e., applying for a certificate of subordination of the NFTL or obtaining a certificate of discharge from the NFTL, would be insufficient to satisfy his supposed need to obtain financing. It is no doubt true that the NFTL lowered petitioner's credit score, but this fact does not establish that refinancing petitioner's home would be impossible or that the NFTL otherwise interferes with petitioner's ability to pay his tax obligations.

Accordingly, there is no evidence in the record to suggest that the NFTL is impairing petitioner's ability to pay his outstanding tax liabilities. Where a motion for summary judgment

has been properly made and supported, the opposing party may not rest upon mere allegations or denials in that party's pleadings but must, by affidavits or otherwise, set forth specific facts showing that there is a genuine issue for trial. Rule 121(d). Respondent's motion was properly made and supported. Petitioner has not offered specific facts to support his contention that the NFTL impairs petitioner's ability to pay his tax liability. Consequently, we conclude that there is no genuine issue for trial regarding that fact.

The record shows that Ms. Williams had sufficient evidence on which she could reasonably base her conclusion that withdrawing the NFTL would not facilitate collection. Petitioner had almost 2 years before the filing of the NFTL during which he made no effort to refinance his home, and petitioner made no payments on his tax liabilities during that entire period. Petitioner's payment history casts doubt on the good faith of his efforts to pay. Accordingly, we conclude that respondent's settlement officer did not abuse her discretion when she determined that withdrawing the NFTL would not facilitate collection of the tax liabilities.

Respondent's settlement officer considered all of petitioner's contentions, verified compliance by the Internal Revenue Service with all applicable laws and regulations, and considered whether the proposed collection actions balanced the

need for efficient tax collection with petitioner's concern that they be no more intrusive than necessary.

On the basis of the record before us, we conclude that there is no genuine issue of material fact for trial. We hold that respondent's settlement officer did not abuse her discretion in sustaining the filing of the NFTL.

In reaching these holdings, we have considered all the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An order and decision will be entered for respondent</u>.